Good morning, Your Honors. Good morning. My name is Joel Baruch, and I'm the trial lawyer on this case and also the appellate lawyer, although I had somebody write my excellent brief. Pardon me, Your Honor. Is that a good thing or a bad thing? Well, I think it's a good thing because my practice is supporting law enforcement. This is a very important case for law enforcement in the state of California. I and the person that wrote this brief for me, a partner, really believe in the police officer bill of rights and the right of officers like Naranjo. I wanted to tell you that I've had these issues before where the L.A. County Civil Service Commission will not handle Rule 9 hearings and give them an administrative appeal as they're entitled to. Well, counsel, as I understand it, the real issue here is whether medically based personnel decisions are properly before that commission. Isn't that right? Well, that's what the commission believes. And that's also what the superior court decided as well in the writ of mandate, right? Right. But what they decided was is that the Civil Service Commission didn't have jurisdiction to do the hearing that was required. Right. But that's another way of saying that the Rule 9 that you're looking for does not apply in a situation like this where your client was determined to medically be ineligible to continue his employment. Isn't that right? Well, medically, here's the problem with that, Your Honor. All right. The reason I brought this case to the district court and not the other ones where this happened is this was a single offense by a tenured officer that had disputed facts as to whether or not he pushed the inmate who came up from behind and startled him because inmates are not supposed to do that. And the reason I brought that is because good facts make good law. I've had other cases where there have been a number of incidences that they lump together as psychological unfitness. Those cases aren't good cases because they don't have good facts. The law should be the same because that's what the police officer below rights is for. You're asking us to make new law then? No. No, no. There is no new law. But what I'm struggling with is this. If your client had not yet been hired and the same medical evaluation had been done, he would not have been hired in the first place. Is that a fair statement? Well, I assume so. They said he was not fit for duty. Although we do have police officers that escape that kind of scrutiny. Perhaps. But the question here is he was in. He passed the probationary period. This was a predicate act that he took in connection with the prisoner. It set in motion an evaluation set up by regulation. They first evaluated him. The medical officer said this gentleman's not fit for duty. He then had an opportunity to bring two people of his own choosing to say he was. And then someone decided the issue and concluded that he was unfit for duty. He was not fired. He just was changed in his assignment because they felt he could not be a law enforcement officer anymore because of his temperament, his mental condition. Well, that's exactly what was decided. But it directly violates the police officer bill of rights in the state of California. According to the superior court, it does not. Well, the superior court. They didn't appeal that, right? No. It was an administrative writ of mandate. And the only issue, only issue before the superior court was whether or not the civil service commission hearing officer should give him a hearing that's required under state law and federal law under due process standards. That's the only thing. And the decision was. I'm sorry. And the decision was. The decision was that the civil service commission lacked jurisdiction to hold that hearing. He wasn't entitled to the hearing that he sought there. Not before the civil service commission, which is what's wrong with rule 9. It's unconstitutional as insofar as due process for four cause employees. And it violates the police officer bill of rights. Couldn't you have argued that in the superior court? The superior court proceeding, this case was removed, I believe. So it never got there. It got to Judge Cronstadt. I was there when Judge Cronstadt entertained the initial motion to dismiss and came up with the idea of severing the civil service commission count, by the way, which was not race judicata or collateral estoppel because of differences with parties. Judge Cronstadt, as I recall correctly, indicated to you he was going to sever this and wanted you to file or go back to the superior court, get rid of mandate. But he warned you specifically that the POBRA issue was very much involved and that there may very well be race judicata based on that decision. Do you recall that? I do not recall that, Your Honor. That's what I understand the case to be. And as my colleague suggested, you certainly had the opportunity to present to the superior court the very issues that you are appealing at this point. And by failing to do that, didn't you basically cut yourself out? Race judicata applies and you have no further remedy? That's what the district court concluded, ultimately, right? Well, we're not talking about the Monell claim here, are we? Well, eventually we are. But let's stick with the Rule 9 issue for the moment on his status. No. What Judge Cronstadt was hoping to accomplish was that let's see if we can get this taken down, taken care of down at the superior court level. Get them a hearing. He wasn't saying that they weren't entitled to a hearing, all right? On the contrary. He said, but that's the forum where the hearing should take place. But we didn't get the hearing. And there will be consequences as a result of the hearing. But we didn't get the hearing. We didn't get the hearing because you got a determination that you weren't entitled to the hearing. Exactly. So we did. We got the determination that the Civil Service Commission lacked jurisdiction. So there was never an opportunity for an administrative appeal under Rule 9. If Naranjo had been a civil warehouse worker and not a police officer, and he had been a tenured employee, he would have got a hearing under Rule 4 of Civil Service Commission. Because the medical issue wasn't involved. And that's a whole different matter, is it not? In your hypothetical, there would be no medical issue. If you think about it, here's what's so heinous about the whole idea. If a captain, like Captain Leyva, wanted to avoid having a very disputed fact situation overturned, he wanted to get rid of this employee, all that he has to do is say, well, you're psychologically unfit. We're going to refer you to the county psychological services. And that's all that they would have to do. That's unfair. That is an end run around the police officer Bill Wright statute. That is a problem with the determination that there's a distinction between medical and disciplinary actions. Well, Judge Cronstadt found it was disciplinary. All right? He did find that. He said it was a punitive action. Where in the record did he find that? I cited it in my brief, but he found it was a ‑‑ I just can't cite to it real quick, but he did say those words, that it was disciplinary and punitive in scope. It is a punitive action. Under government code section 3304B, any dismissal, demotion, suspension, transfer for purposes of punishment is a per se punitive action regardless of the motivation. But you're disagreeing with the district court, with the state court. On the administrative writ? Yeah. Those issues weren't touched. I just wanted to get a hearing. All right? They didn't decide that it wasn't a punitive action. They just ‑‑ The record demonstrates plaintiff was involuntarily demoted because of medical reasons and not disciplinary reasons. That's what they said. I'm reading from the superior court decision. But how do you convince it without evidence? That's what we were trying to prove. That's why we brought the lawsuit. All right? I know that Judge Cronstead said it was a punitive action. And that's what he said in the record. And if I had a minute, I could ‑‑ Whether he did or didn't doesn't change the fact that, as my colleague read, the superior court determined that this was a medically based change, sent it back. Judge Cronstead said, hey, you know, they've decided it. We note that you didn't raise the other issues that you raise on appeal here. And you're really out of luck, aren't you? No, I'm not. I don't see that at all. That was not the intent for going back. The intent ‑‑ I understand. Judge Cronstead, I believe that his intent was get your hearing down there. All right? Get your administrative appeal down there. He wasn't saying you don't have a right to an administrative appeal. There is a case I would like to cite that's new. Let me suggest this. You're over time. All right. We've engaged you quite a bit. We're going to give you a minute after the county has an opportunity to respond. But you can give us the rest of your argument at that point. Okay. I just ‑‑ I have a ‑‑ Wait. When you come back. Okay. Thank you. We'll hear from the county. Good morning, Your Honors. Avi Berkowitz on behalf of the county appellees and defendants. Let's just start off, Your Honors, with noting what the complaint was in this case. There was a due process claim in federal court. There was a claim for a POBAR violation, Peace Officers' Bill of Rights. And there was a cause of action that was brought by the appellant for a writ. What Judge Cronstead did was say if you want this writ, you've got to go to the superior court. He severed the writ, told the appellant and said, here's what's going to happen. If you're going to go on this writ, you can do that, but there's consequences. And that's in the record, and the court is aware of that. And this appellate court is aware of that. He could have dismissed it and said, no, I don't want to go in the superior court. I'm going to go with my federal claim due process. He has that right. He didn't do that. What he did was have the case stayed, go to the superior court, and the superior court made certain findings, which is in the record. Those findings included that POBAR is not applicable in this case. Those findings indicated that plaintiff, now appellant, received a skelly hearing and got sufficient due process. That's all in the record. And the record also was it wasn't disciplinary. It was a medical basis. The report ends up concluding the commission didn't abuse its discretion in determining that it lacked jurisdiction, but not just jurisdiction. Plaintiff was not denied a fair hearing. That's the due process claim, right? That is the due process claim. Now, what appellant could have done was go to the California appellate court to appeal this decision. That would have been on Spring Street for geographically challenged individuals. He didn't do that. What he did was he continued back with Judge Cronstant in federal court, a different forum, and the judge, Judge Cronstant, decided to apply the fair and faithful faith in credit clause or the Rooker-Feldman or whatever it's called now. But the bottom line was we have a state claim that is now final on claims including due process, POBAR, and the district court is bound by those decisions. He's bound. Well, one of the arguments that appears to be made is that Judge Cronstant in sending it over made a determination that he was entitled to a hearing and that he should receive that and that was a matter that should properly be decided by the state court. That is that he didn't, he didn't send the whole thing over there. He just sent the, the, well. The writ. The writ over there. Yes. And that he made a conclusion that he would be entitled to a hearing under that. So I have a response to that. First of all, what we didn't even talk about yet was that initially there was a hearing before we even got to the district court where the hearing officer in the civil service denied a full hearing by saying that there was enough process. So what Appellant did was, and I'm answering your Honor's question, was the writ was entitled as a cause of action. Instead of appealing that immediately to the superior court, which he could have done also, by the way, what he did was he brought the whole thing in district court. So what Judge Cronstan did was say this writ cause of action, it's not appropriate in federal court. The way to do that is you've got to go to superior court. Now he had already blown the deadline to go to superior court to challenge because the way it works is you go to civil service, then you go to superior court, then you want to go, you can go to California public court. He didn't do that. So what he did was he bypassed that by just filing in superior court and Judge Cronstan said if you want to do that, fine. We're going to send it over here because the judge, Judge Cronstan, he can't entertain a writ in the superior court. Those are in the district court. Those are superior court cause of action like Department 91. But he can, he can consider a due process claim. Absolutely. And he did and he was going to on a, I'm sorry, Your Honor, the federal due process claim. He could consider it. That's correct. Why isn't that still here? Because, for a couple of reasons. One is because Judge Cronstan had found that once appellant exercised his decision to go in superior court, the district, I'm sorry, the superior court determined that due process had been met. So because due process had been met and there was no violation of due process, Judge Cronstan had found, okay, there's already a state court decision, therefore there's no federal violation for due process. Now, here's the key thing here. One of the arguments that appellant has just made was it's not fair. It's not right. Here's someone who is a police officer who has this claim. Lava makes this claim. He can just want to get him out. Okay. He could have made a claim for retaliation, for disability discrimination, for failure to accommodate, all these different types of claims. But what's, the only claim here is federal, is due process. And you already have a judicial determination of due process, therefore there was nothing for Judge Cronstan to do. You already have a judicial determination of due process. Would you address what Judge Cronstan said to the appellants in this case about the potential consequences of a decision by the superior court, in terms of the Monell and more broadly based claims like the Pobre claim? Yes. So this is on the record as well. I believe it's buried somewhere there. But what Judge Cronstan had said was initially when this case went forward, before any motion had been determined, Judge Cronstan had said that you've got this cause of action for writ, and that needs to be determined first before I go and determine whether federal due process rights or this separate claim for relief for Pobre is established. If you want to proceed with that claim, you need to go to the superior court. But what's going to happen is if the superior court makes determination that is favorable to you, that is going to help you. If it's not favorable to you, it could hurt your case. And he proceeded and went on in the superior court. I hope I answered your question. But what I'm not understanding is what choice he had. Oh, the choice he had, he could have just dismissed the cause of action for writ. In other words, let's say the court says, the district court says, you know what, you want to proceed with this claim? You can go to superior court. Appellant could have said, you know what, I'm going to dismiss this with prejudice, without prejudice, whatever it is, and just proceed with my due process right. He could have done that. Then you would have had no judicial determination at that point. There's no collateral estoppel. It's been dismissed without prejudice. There's no determination. But it was the collateral estoppel that was kind of the issue hanging out there, because the allegations all dealt with the same set of facts, right? Right. There's nothing new here. Correct. And the superior court, when it held the hearing on the writ, was dealing with those facts. And didn't Judge Cronstadt take the position that since he had an opportunity to raise those claims before the superior court did not do so, and then did not appeal, that those issues were final? Well, no. I think what he said was it was only after the superior court made that determination. The superior court made the determination. The matter was now. All right. But what I'm saying, didn't he warn them beforehand? Maybe I didn't read what he said carefully enough. Didn't he kind of indicate when you go to the superior court, there will be consequences from that? Yes. Yes. And I agree with that. But in the typical case, where you have collateral estoppel consequences, there's a choice. You can either go to the State court and litigate those claims, and if you could have litigated the Federal claims there and you don't, that's your choice. What you're saying Judge Cronstadt told them was you have to go to the State court. What I am saying is if you want this particular writ, random estate cause of action decided, yes, you're going to have to go to State court. And then you're arguing that the State court decided the due process question. I am saying that, yes. Well, that was not entirely clear to me in reading this. Suppose that it didn't. Suppose it didn't. Well, I would say that, I don't know, I hear the question. So my response is I think two answers to that. One is it did, because it did say specific things such as due process has been met, there was a skelly hearing, there was sufficient process. So that would be my first answer, Your Honor. The second, if it did not say that and it was completely silent, then I would say by reading the report, assuming you take out that extraneous language I just mentioned, I still think there would be that due process met because there still was that process. You still had a psychologist look at, by the way, that psychologist is in a different department, not the Sheriff's Department. Then there's the second type of appeal process within that particular unit. Then after that there's a skelly hearing back to the Sheriff's Department. So there is a due process. So I think there's two layers on that. Okay. And the Monell claim is subsumed in all of this, how? Correct. Because, well, the Monell claim is, the Court is well aware, the Monell is kind of dependent on the claims that are first based on the individuals. We have to look at, by the way, we haven't even talked about, who are the individuals who are claimed to have done any wrongdoing before you even get to the Monell claim. The Monell claim is there's a pattern in practice that's based on a Rule 9 mismanagement. Who are those people who are doing that? Sheriff Baca? Captain Leyva? The CEO from the OHP? There's nobody who's alleged to have done anything that contributed to a pattern in practice. Those people were dismissed in any event, right? Exactly. Correct. Or at least there was no opposition to them. Yes. Do either of my colleagues have additional questions? All right. Counsel, thank you. You have a little rebuttal time. I'm kind of dismayed when I heard the questions, except from Judge Schroeder. She's a fine judge. I'm just dismayed because what Federal, I've been here before, not in the Ninth Circuit, but I've been in district court arguing the Police Officer Bill of Rights, and I've got to tell you, they don't get it the same way that California State judges get it. This Police Officer Bill of Rights is gold for police officers. You spend a lot of money on training. You spend a lot of money on making them conform their conduct to the way police officers should act, and you can't just fire them. You can't fire them without due process. There was no due process. Counsel, I respect what you're saying, and it may very well be that the judges of the Superior Court and elsewhere in California are far superior than the Federal judges, but that's not the issue before us. The real issue is you had a Superior Court hearing by one of those excellent judges. They ruled against you in every respect, and the case, as far as Judge Cronstadt was concerned, is over. But they denied me a procedural. I understand. They didn't deny, they denied procedural due process. That's what California did. That's your problem, and we appreciate it. What did I do to dismay you so much? No, you didn't dismay me. I said, except the questioning, the tenor of the questioning dismayed me, except yours. You were the good judge. Except yours. I was going along with yours. Oh, except mine. Oh. I was a good judge. You were excellent. And I don't mean any disrespect, Your Honor, but I was taught 50 years ago when I went to law school that for every wrong, there's a remedy. Think about that, but I think the case is over. Can I cite the one case? That's a good way to end, though. Can I cite a new case to you? Send it in a 28-J letter, unless you have it immediately ready. Yes, we said that you could cite it on rebuttal. What's the case? It's a June 17 case, Morgado, M-O-R-G-A-D-O, v. City and County of San Francisco, 13, Cal App, 5th, 1, at page 16. It deals with the home rule issue of Rule 9. Not that particular home rule statute, but it deals with the fact that the POBR statute in California overrules the right of local agencies to formulate their own rules that don't comply with administrative appeals and POBR. Great. Thanks for that reference. Thank you, Counsel Boe, for your argument. The case just argued is submitted.
judges: Schroeder, M. Smith, Drain